UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KALEIDA HEALTH,

                                        Plaintiff,

              -vs-                                        05-CV-0675C(F)


MEDTRONIC SOFAMOR DANEK USA, INC.,

                                        Defendant.
_____


APPEARANCES:   HODGSON RUSS, LLP (JEFFREY C. STRAVINO, ESQ., of
               Counsel), Buffalo, New York, for Plaintiff.

               HOGAN & HARTSON LLP (MARK D. GATELY, ESQ., of Counsel),
               Baltimore, Maryland,
                                        -and-
               JAECKLE FLEISCHMANN & MUGEL LLP (CHARLES C.
               SWANEKAMP, ESQ., of Counsel), Buffalo, New York, for Defendant.


        This action was commenced on August 31, 2005 in New York State Supreme Court,

Erie County, and was removed to this court on September 22, 2005 by notice of removal

pursuant to 28 U.S.C. §§ 1441 and 1446, based on diversity of citizenship of the parties.

Plaintiff Kaleida Health ("Kaleida") seeks damages against defendant Medtronic Sofamor

Danek USA, Inc. ("Medtronic") totaling $1.8 million based on causes of action for breach

of contract, unjust enrichment, and fraud resulting from Medtronic's alleged improper billing

practices.  Medtronic has moved to dismiss the complaint pursuant to Rules 12(b)(6) and

9(b) of the Federal Rules of Civil Procedure (Item 12).  Oral argument of the motion was

heard by the court on November 9, 2006.

For the following reasons, Medtronic's motion to dismiss is granted in part and denied in part.

## BACKGROUND

Kaleida is a network of hospitals and related health care facilities located throughout Western New York.  Medtronic manufactures and markets medical devices and products for distribution worldwide (Complaint, ¶¶ 1-3).[1]

As alleged in the complaint, beginning in October 1999 Kaleida and Medtronic engaged in a "purchase order-invoice" business relationship whereby Kaleida issued purchase orders to Medtronic for delivery of medical products, and Medtronic issued corresponding invoices to Kaleida pursuant to an agreed-upon price list.  Kaleida claims that Medtronic operated under a strict "credit hold" policy which forced Kaleida to pay disputed invoices or charges prior to delivery in order to ensure uninterrupted provision of medical services and seek credit or reimbursement later.  As part of an audit covering the one-year period from March 2001 through April 2002, Kaleida discovered a number of discrepancies in Medtronic invoices that Kaleida had already paid in full, resulting in overcharges of approximately $1.2 million (*id.* at ¶¶ 4-8).

According to the complaint, Medtronic acknowledged the invoice discrepancies and credited or wrote off over $1 million in charges to Kaleida.  Medtronic also terminated the employment of two of the representatives in charge of the Kaleida account.  Kaleida alleges that Medtronic has refused to provide credit memoranda or other documentation

---

[1] The complaint is attached as "Tab 2" to the "Notice of and Petition for Removal," Item 1.

for the writeoffs and has otherwise failed to provide information necessary for Kaleida to complete its audit (*id.* at ¶¶ 9-16).

In its first cause of action, Kaleida claims that Medtronic's improper billing practices resulted in a breach of Medtronic's ongoing contractual obligations to Kaleida, as well as a breach of the duty of good faith and fair dealing under the Uniform Commercial Code ("U.C.C.") (*id.* at ¶¶ 17-22).   In its second cause of action, Kaleida claims that Medtronic has been unjustly enriched by the overcharges resulting from Medtronic's deceptive billing practices (*id.* at ¶¶ 23-25).   In its third cause of action, Kaleida alleges that Medtronic's billing practices constituted a scheme to defraud Kaleida (*id.* at ¶¶ 26-35).

Medtronic moves to dismiss the complaint in its entirety based on the following arguments:

1. Kaleida's contract claim arising from invoices issued before August 31, 2001 is barred as untimely under the U.C.C.'s four-year statute of limitations.

2. Kaleida's contract claim with respect to invoices issued after August 31, 2001 fails to state a claim upon which relief can be granted.

3. The unjust enrichment claim is precluded by the alleged existence of a contract between the parties.

4. Failure to allege facts to support a fraud claim independent of the breach of contract claim.

Each of these contentions is addressed in turn below.

## DISCUSSION

### I.      Motion to Dismiss Contract/Quasi-Contract Claims:  Rule 12(b)(6)

The standards for district court review of a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted are well known.  The court must "accept as true the factual allegations of the complaint, and draw all inferences in favor of the pleader."  *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993).  However, "legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness."  *L'Europeenne de Banque v. La Republica de Venezuela*, 700 F. Supp. 114, 122 (S.D.N.Y. 1988), *quoted in Baines v. Masiello*, 288 F. Supp. 2d 376, 383 (W.D.N.Y. 2003).  The complaint may only be dismissed when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### A.      Statute of Limitations[2]

Defendant contends that since Article 2 of the U.C.C. governs the commercial sales transactions at issue in this case, the four-year statute of limitations set forth in U.C.C. § 2-725 bars Kaleida's breach of contract claim relating to invoices issued by Medtronic prior to August 31, 2001 (*i.e.*, four years prior to the filing of the complaint).  U.C.C. § 2-725 provides that "an action for breach of any contract for sale must be commenced within four

---

[2]The defense of statute of limitations is properly raised by a Rule 12(b)(6) motion where the complaint on its face shows noncompliance with the limitations period.  *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n. 1 (3d Cir. 1994); *see also Adams v. Crystal City Marriott Hotel*, 2004 WL 744489, at *2-*3 (S.D.N.Y. April 6, 2004).

years after the cause of action has accrued. . . .  A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach."

Kaleida does not directly dispute this aspect of Medtronic's motion.  Rather, Kaleida contends that under settled principles of New York law, a plaintiff may assert claims in the alternative for both breach of contract and fraud (which carries a six-year limitations period) based on the same set of facts even where the limitations periods are different, so long as the fraud claims are not duplicative of the contract claims.  This contention is addressed at length in Part II below.

Accordingly, in the absence of any stated opposition to Medtronic's motion to dismiss in this regard, Kaleida's breach of contract claim based on invoices issued by Medtronic prior to August 31, 2001 is barred by the four-year statute of limitations set forth at U.C.C. § 2-725.

### B.     Breach of Contract

Medtronic next argues that Kaleida has failed to state a claim for breach of contract based upon invoices issued on or after August 31, 2001, *i.e.*, four years prior to the commencement of this lawsuit.  According to Medtronic, the complaint contains only vague references to the "purchase order-invoice course of dealing" between the parties, without any specific reference to the terms of the purported contractual agreement, the provisions breached, or the damages suffered.

In order to state a claim for breach of contract under New York law, the complaint must allege (1) the existence of a contract, (2) the plaintiff's performance of its obligations, (3) the defendant's failure to perform its obligations, and (4) that the plaintiff suffered

damages as a result. *See Cleveland Wrecking Co., v. Hercules Construction Corp.*, 23 F. Supp. 2d 287, 292 (E.D.N.Y. 1998), *aff'd*, 198 F.3d 233 (2d Cir. 1999). To meet these requirements, the complaint must at a minimum set forth the terms of the agreement upon which liability is predicated, either by express reference or by attaching a copy of the documents comprising the agreement. *Chrysler Capital Corp. v. Hilltop Egg Farms, Inc.*, 129 A.D.2d 927, 928, 514 N.Y.S.2d 1002, 1003 (3d Dep't 1987). However, the plaintiff is not required to attach copies of the contractual documents or plead the terms verbatim. *See Griffin Bros. v. Yatto*, 68 A.D.2d 1009, 415 N.Y.S.2d 114, 114-15 (3d Dep't 1979). All that is required is a "short and plain statement" of the breach of contract claim, Fed. R. Civ. P. 8(a)(2), "that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47; *see also Leepson v. Allan Riley Co., Inc.*, 2006 WL 2135806, at *3-*4 (S.D.N.Y. July 31, 2006) (complaint alleging failure to pay for performance of legal services in connection with several real estate transactions pursuant to terms of retention letter sufficient to state claim for breach of contract).

The court's review of the complaint in this case reveals that Kaleida alleges, in its First Cause of Action, the existence of "an ongoing contractual relationship by virtue of a price-list exchange, as well as their PO-invoice course of dealing" (Complaint, ¶ 19). Kaleida next alleges that Medtronic failed to perform its contractual obligations when it charged Kaleida for ordered products at prices higher than agreed to, failed to deliver ordered products, double-billed certain purchase orders, and sent "non-descriptive, unmatchable, and fraudulent invoices" (*id.* at ¶ 20). Finally, Kaleida alleges that this conduct caused damages believed to be in excess of $500,000 (*id.* at ¶ 22).

However, there are no specific allegations contained in the First Cause of Action with respect to Kaleida's performance of its obligations under the alleged contractual relationship.  Kaleida does allege, in its Third Cause of Action (for fraud), that it paid the invoices in full to its detriment (*see id.* at ¶ 31).  Kaleida also argues that even if the breach of contract claim is somehow lacking, Medtronic has sufficient notice of the basis for the claim as the result of the overall allegations of the complaint and the ongoing business relationship of the parties.

Accepting the overall allegations in the complaint as true, and drawing all reasonable inferences in favor of the pleading party, the court finds that Kaleida has at least marginally set forth facts which would entitle it to relief on its claim for breach of contract based upon invoices issued by Medtronic on or after August 31, 2001.  However, as discussed at oral argument, the court believes that the better practice in this case is to grant Kaleida leave to submit an amended complaint in order to clearly and fully meet the pleading requirements for stating a breach of contract claim under New York law.

## C.    Unjust Enrichment

In its second cause of action, Kaleida alleges that Medtronic has benefitted from payments by Kaleida based on overcharges, double billing, and fraudulent invoices, resulting in unjust enrichment in excess of $800,000.  Medtronic seeks dismissal of this claim on the ground that it is precluded by the alleged existence of a contract between the parties.

Under New York law, a plaintiff claiming unjust enrichment must plead and prove (1) that the defendant was enriched, (2) that the enrichment was at the plaintiff's expense,

and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff. *Golden Pacific Bank Corp. v. Federal Deposit Insurance Corp.*, 273 F. 3d 509, 519 (2d Cir. 2001). The statute of limitations for claims of unjust enrichment, like for claims of fraud, is generally six years. *Id.*; *see* N.Y.C.P.L.R. § 213; *but cf. Herba v. Chichester*, 301 A.D.2d 822, 823, 754 N.Y.S.2d 695, 697 (3d Dep't 2003) (breach of contract, unjust enrichment, and account-stated claims based on same allegations of nonpayment for delivery of goods are all governed by four-year statute of limitations under U.C.C.).

A claim for unjust enrichment "lies as a quasi-contract claim. It is an obligation the law creates *in the absence of any agreement*." *Beth Israel Medical Center v. Horizon Blue*, 448 F.3d 573, 587 (2d Cir. 2006) (quoting *Goldman v. Metropolitan Life Ins. Co.*, 5 N.Y.3d 561, 572 (2005)). As the New York Court of Appeals has explained:

> The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter. A "quasi contract" only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment. Indeed, we have stated that: "Quasi contracts are not contracts at all, although they give rise to obligations more akin to those stemming from contract than from tort. The contract is a mere fiction, a form imposed in order to adapt the case to a given remedy . . . . Briefly stated, a quasi-contractual obligation is one imposed by law *where there has been no agreement or expression of assent, by word or act, on the part of either party involved*. The law creates it, regardless of the intention of the parties, to assure a just and equitable result."

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 388-89 (1987) (quoting *Bradkin v. Leverton*, 26 N.Y.2d 192, 196 (1970); other citations omitted).

While a plaintiff may simultaneously allege breach of contract and unjust enrichment in its complaint, the courts generally will allow the alternate theories to proceed only "where there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue . . . ." *Joseph Sternberg, Inc. v. Walber 36th St. Assocs.*, 187 A.D.2d 225, 228, 594 N.Y.S.2d 144, 146 (1st Dep't 1993), *quoted in Bazak Intern. Corp. v. Tarrant Apparel Group*, 347 F. Supp. 2d 1, 4 (S.D.N.Y. 2004).  Thus, a dispute over the validity of the contract at issue will permit the plaintiff to assert unjust enrichment as an alternative to breach of contract, "and unlike this latter claim, a claim of unjust enrichment may serve as a basis for recovery should a trier of fact determine that, in fact, no valid contract was formed or that the contractual obligations did not encompass the events underlying the asserted basis for [the plaintiff]'s unjust enrichment claim." *Net2Globe Int'l, Inc. v. Time Warner Telecom of New York*, 273 F. Supp. 2d 436, 466 (S.D.N.Y. 2003) (citing *Bridgeway Corp. v. Citibank, N.A.*, 132 F. Supp. 2d 297, 305 (S.D.N.Y. 2001) ("Generally, quasi-contractual relief, such as unjust enrichment, is not permitted when an express agreement exists that governs the dispute between the parties . . . .  Because there is a dispute as to defendant's obligations under the contract, however, plaintiff's unjust enrichment claim survives, although solely as an alternative to the breach of contract claim.").

In this case, as evidenced by the discussion in Part I(B) above, Medtronic disputes the very existence of a contractual relationship between the parties, as well as the scope of any obligations imposed under the purchase order-invoice arrangement.  Accordingly, accepting the allegations in the complaint as true and drawing all reasonable inferences

in favor of Kaleida, it cannot be said at this stage of the litigation that Kaleida has set forth

no facts that would entitle it to relief on its theory of unjust enrichment as an alternative to

its breach of contract theory.

## II.    Motion to Dismiss Fraud Claims:  Rule 9(b)

Finally, Medtronic moves to dismiss Kaleida's fraud claims as duplicative of the

breach of contract claim, and for failure to allege fraud with particularity as required by Fed.

R. Civ. P. 9(b).  Addressing this latter contention first, Rule 9(b) imposes a heightened

pleading requirement for fraud claims, stating that "[i]n all averments of fraud or mistake,

the circumstances constituting fraud or mistake shall be stated with particularity.  Malice,

intent, knowledge, and other condition of mind of a person may be averred generally."

Fed. R. Civ. P. 9(b).  This requirement is designed to (1) provide the defendant with

sufficient notice to prepare a proper defense, (2) protect against harm to the defendant's

reputation or goodwill, and (3) reduce the number of strike suits.  *See DiVittorio v.

Equidyne Extractive Indus. Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

The elements of a claim for fraud under New York law are:  (1) a material, false

representation by the defendant, (2) made with the intent to defraud, (3) reasonable

reliance upon the representation by the plaintiff, and (4) resulting damage to the plaintiff.

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 104 (2d Cir. 2001).

In addition, to comply with Rule 9(b), a complaint charging fraud "must (1) detail the

statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker,

(3) state where and when the statements (or omissions) were made, and (4) explain why

the statements (or omissions) are fraudulent."  *Harsco Corp. v. Segui*, 91 F.3d 337, 347

-10-

(2d Cir. 1996); *On-Line Technologies v. Perkin Elmer Corp.*, 141 F. Supp. 2d 246, 258 (D.Conn. 2001). These stringent requirements are, however, tempered by Fed. R. Civ. P. 8(a), which provides that the complaint should contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," as well as by "the practicality of alleging in elaborate detail facts constituting fraud prior to discovery." *Billard v. Rockwell Int'l Corp.*, 683 F.2d 51, 57 (2d Cir. 1982); *see also Henneberry v. Sumitomo Corp. of America*, 415 F. Supp. 2d 423, 455 (S.D.N.Y. 2006).

In this case, Kaleida alleges in its third cause of action that the Medtronic invoices contained false and misleading information with respect to price, quantity, corresponding purchase order, or other material terms; that Medtronic sent these false invoices with the intent to deceive Kaleida into making payments; that Kaleida relied on the information in these invoices to its detriment; and that it has been damaged as a result (*see generally* Complaint, ¶¶ 27-35). These allegations, considered in light of the six-year purchase order-invoice business relationship alleged to exist between the parties, are sufficient to meet the pleading requirements for fraud claims under New York law and Federal Rules 8(a) and 9(b).

With respect to Medtronic's contention that Kaleida's fraud claim is duplicative of the claim for a breach of contract, New York cases recognize that some acts giving rise to a cause of action for breach of contract may also form the basis for a fraud claim. *See, e.g.*, *Deerfield Communications Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956 (1986); *Jan Sparka Travel, Inc. v. Hamza*, 182 A.D.2d 1067, 587 N.Y.S.2d 958, 959 (4th Dep't 1992). However, a cause of action for fraud may not be maintained where the only fraud

alleged relates to a breach of contract. *Van Neil v. Berger*, 219 A.D.2d 811, 632 N.Y.S.2d 48 (4th Dep't 1995).

> To maintain a claim of fraud in such a situation, a plaintiff must either: (I) demonstrate a legal duty separate from the duty to perform under the contract, or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract, or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.

*Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (citations omitted).

In addition, it has long been the rule in New York:

> that a breach of contract may be so intended and planned; so purposely fitted to time, and circumstances and conditions; so inwoven into a scheme of oppression and fraud; so made to set in motion innocent causes which otherwise would not operate, as to cease to be a mere breach of contract, and become, in its association with the attendant circumstances, a tortious and wrongful act or omission.

*Rich v. New York Central & H.R.R.R. Co.*, 87 N.Y. 382, 398 (1895); *see also Albemarle Theatre, Inc. v. Bayberry Realty Corp.*, 27 A.D.2d 172, 176-77, 277 N.Y.S.2d 505, 510-11 (1st Dep't 1967) (allegations that defendant wilfully and intentionally improperly performed contract and did so, in connection with other acts, in a manner calculated drastically to decrease plaintiff's competitive position and value, to defendant's own substantial benefit constituted not only claim for breach of contract, but violation of legal common law duty extraneous to contractual duty not to act willfully to destroy property of another).

Finally, a contracting party's "misrepresentation of present fact, not of future intent, collateral or extraneous to the contract, but which is an inducement to the contract, can give rise to a separate claim of fraudulent inducement." *D.S. America (East), Inc. v.*

*Chromagrafx Imaging Systems, Inc.*, 873 F. Supp. 786, 796 (E.D.N.Y. 1995) (citing *Deerfield Communications*, 68 N.Y.2d at 956).

Upon close review of the allegations in the complaint as a whole, the court finds that although it is not the model for pleading fraud independent of an existing contractual relationship, it at least marginally sets forth a duty on the part of Medtronic distinct from the obligation to provide goods and services under the purchase order-invoice arrangement, as well as conduct "so inwoven into a scheme of oppression and fraud . . . as to cease to be a mere breach of contract," *Rich*, 87 N.Y. at 398, sufficient to withstand the motion to dismiss.  For example, Kaleida alleges that it repeatedly requested information from Medtronic necessary to determine the accuracy or validity of discrepant invoices, but Medtronic refused to provide this information (Complaint, ¶¶ 10, 13, 14, 33-34).  Kaleida also alleges that Medtronic terminated the employment of two of the individuals responsible for the Kaleida account for misconduct (*id.* at ¶¶ 11, 15).  Significantly, Kaleida alleges that Medtronic "engaged in a scheme to defraud" by knowingly or recklessly sending false invoices with the intent to deceive Kaleida into making payment, and refusing to take corrective action until Kaleida discovered the falsity and complained (*id.* at ¶ 30).

Accepting these allegations as true, and drawing all reasonable inferences in Kaleida's favor, Kaleida has set forth actionable duties on the part of Medtronic separate from the contractual duty to provide bargained for medical goods and services– specifically, the duty to provide accurate billing and invoice information upon request, the duty to properly manage accounts, the duty not to conceal information about its sales representatives' misconduct, and the duty not to willfully induce Kaleida Health into making payments on fictitious invoices for products that were never ordered.  While it is true that

the complaint could have been drawn to more fully and accurately track the pleading requirements outlined in the cases cited above, it is apparent to the court that the allegations of fraud provide Medtronic with sufficient notice of its challenged conduct to allow it to frame responsive pleadings, and to otherwise satisfy the prophylactic goals of Rule 9(b) in conjunction with the liberal pleading standard of Rule 8(a).

Accordingly, because the court finds that Kaleida has at least marginally pleaded a claim for fraud independent of its breach of contract claim, it cannot be said that Kaleida can prove no set of facts in support of this claim that would entitle it to relief.  As it did with respect to the breach of contract claim, the court will grant Kaleida leave to amend its fraud claim to more fully and clearly comply with the specific pleading requirements discussed above.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss (Item 12) is granted to the extent it seeks dismissal of plaintiff's claim for breach of contract based on invoices issued by Medtronic prior to August 31, 2001, as that claim is barred by the four-year statute of limitations found at U.C.C. § 2-725.  Defendant's motion is denied in all other respects.

Plaintiff shall submit its amended complaint, in accordance with the matters set forth above and the discussion had at oral argument in open court, within thirty days from the date of this order.  Defendant shall plead in response within twenty days after service of the amended complaint.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:    December 21   , 2006
p:\opinions\05-67.dec2006.